IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LOUISE MILLER WHITE

    Plaintiff,

v.                                            Case No. <u>8:24-cv-00321       </u>

U.S. BANK TRUST NATIONAL ASSOCIATION

RCF 2 ACQUISITION TRUST

SELENE FINANCE LP

BWW LAW GROUP, LLC

SERVICELINK FIELD SERVICES, LLC

    Defendants.

## COMPLAINT AND JURY DEMAND

The Plaintiff, Luise Miller White (hereinafter "Ms. White"), by and through undersigned counsel, files suit against the named defendants, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action brought pursuant to Federal Debt Collection Practices Act ("FDCPA"), Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Consumer Protection Act ("MCPA"), breach of contract and the common law torts of trespass and conversion.

## JURISDICTION & VENUE

2. This Court has jurisdiction and venue of the matters asserted herein. More specifically, jurisdiction is appropriate for the following reasons: (a) on the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs, see 28 U.S.C. §1332; (b) the matters asserted herein present a mix of federal and state questions, See 28 U.S.C. §§ 1331 & 1367; and (c) venue is proper pursuant to 28 U.S.C. § 1391(b)(2) for Plaintiff resides in this District and the conduct complained of occurred in this District.

## PARTIES TO THIS ACTION

3. Ms. White is a natural person who resides in Prince George's County Maryland.

4. U.S. Bank Trust National Association ("US Bank") is a national banking association that is organized and existing under the laws of the United States of America.

5. RCF 2 Acquisition Trust ("RCF") is a Delaware statutory trust.

6. Selene Finance LP ("Selene") is a loan servicer that specializes in defaulted loans.

7. BWW Law Group, LLC ("BWW") is debt collection law firm that specializes in collecting defaulted mortgage debts on behalf of lenders and loan servicers.

8. ServiceLink Field Services, LLC ("ServiceLink") provides property preservation for lenders and services that are responsible for maintaining vacant properties.

## FACTUAL ALLEGATIONS

**A.     The HELOC Note Is Non-Negotiable**

9. On or about July 31, 2007, Plaintiff entered into a Home Equity Line of Credit ("HELOC") Agreement with non-party Bank of America N.A. ("BoA").

10. The HELOC Agreement did not contain an unconditional promise to pay a sum certain in money upon demand and the HELOC was memorialized in a promissory note ("Note").

11. Instead of a promise to pay a sum certain, the HELOC allowed Plaintiff to borrow up to $100,000.00 in various draws with a variable interest rate, and the balance was secured by a deed of trust ("DOT") on Plaintiff's home.

12. A home equity line of credit such as Ms. Louise's, by design, is not a loan for a fixed amount of money but rather a form of open-ended credit similar to a credit card.

13. Because HELOCs are not loans for fixed amounts of money, they do not constitute negotiable instruments as defined by Article 3 of the Uniform Commercial Code.[1]

---

[1] A "negotiable instrument [is] an unconditional promise or order to pay a fixed amount of money." Md. Code Ann., Com Law § 3-104.

2

14. Upon entering into the HELOC, Plaintiff did not receive a loan for and did not borrow $100,000, or any other fixed amount.

**B.      Defendants Are Debt Collectors That Do Not Own The Note**

15. On September 28, 2020, Defendant RCF 2 was formed in the State of Delaware.

16. On information and belief, Defendant RCF 2 was formed for the express purpose of purchasing delinquent consumer mortgage debt, and attempting to collect said debt.

17. Defendants claim RCF 2 owns the HELOC.

18. Federal law, i.e. TILA, requires a new loan owner to notify the borrower in writing that it has acquired the borrower's loan.

19. Ms. White did not receive notice that the ownership of the HELOC had changed.

20. Upon information and belief, the Defendants did not notify Ms. White that RCF 2 owned the HELOC Note because RCF 2 did not purchase the HELOC Note and did not acquire ownership of the HELOC Note.

21. US Bank purports to be trustee for the RCF 2 trust.

22. Selene purports to be the servicer for RCF 2.

23. As the servicer for RCF 2, Selene was in the position to know, or should have known, that (i) US Bank and RCF 2 did not have possession of the HELOC Note, (ii) did not purchase the HELOC Note and (iii) did not possess any documents demonstrating they had any legally enforceable interest in the HELOC Note.

**C.      Fraudulent Documents And Void Transfers Or Appointments**

24. In December 2022, Meridian attempted to transfer the HELOC Note to RCF 2.

25. Specifically, Meridian created a document that falsely stated Meridian had no legal interest in the HELOC Note.

26. Meridian was not authorized by the true and actual owner of the loan to sale or transfer ownership of the HELOC Note to RCF 2.

27. Meridian created a document that falsely represented that Meridian transferred the DOT and related note(s) from BoA to US Bank and RCF 2.

28. The Meridian document falsely represented that the original loan amount for the HELOC Note was $100,000.

29. Meridian intentionally misrepresented the original loan amount as being $100,000 instead as a line of credit for $100,000 because Meridian wanted to create the false impression that there was fixed payment amount, which in turn, would create the false impression the HELOC Note was a negotiable promissory note.

30. Meridian's fraud was not happenstance for Selene hired Meridian to create a false document that purported to transfer the HELOC Note to US Bank and RCF 2.

31. BoA was not involved in Meridian's fabricated transaction.

32. On information and belief, BoA no longer owned the HELOC Note when Meridian falsely represented that it had transferred the HELOC Note from BoA to US Bank and RCF 2.

33. This fraudulent transfer document constituted a false, deceptive, and misleading statement, inasmuch as BoA was not involved in the purported transfer of the HELOC.

34. Although Selene knew that US Bank and RCF 2 had no recognizable legal interest in the HELOC Note, Selene attempted to appoint BWW as a substitute trustee for HELOC DOT.

35. In doing so, Selene executed a document titled "Appointment of Substitute Trustee" that falsely claimed US Bank and/or RCF 2 was the "holder" of the HELOC Note.

36. Even if US Bank and/or RCF 2 was the "holder" of the HELOC Note, the loan servicing agreement between Selene and US Bank/RCF 2 did not authorize Selene to appoint a trustee on behalf of US Bank/RCF 2.

4

37. Nonetheless, BWW purports to be the substitute trustee for HELOC DOT.

38. In masquerading as the substitute trustee, BWW in the position to know, or should have known, that (i) RCF 2 did have possession of the HELOC Note, (ii) did not purchase the HELOC Note and (iii) did not possess any documents demonstrating that any legally enforceable interest in the HELOC Note was transferred to RCF 2.

**D.   Defendants' Wrongful Foreclosure Action Against Plaintiff**

39. In August 2023, at the behest of Selene, BWW filed a foreclosure action ostensibly for the benefit and on behalf of US Bank and RCF 2.

40. Included in the foreclosure filing were the fraudulent assignment document that was created by Meridian and the invalid Appointment of Substitute Trustee.

41. The fraudulent assignment by Meridian was void ab initio because Meridian had no legal interest whatsoever in the HELOC.

42. Given Meridian was not legally permitted to assign the HELOC, the inclusion of the fraudulent assignment document in the foreclosure action constituted a false, deception and misleading representation, to both Plaintiffs and to the Court itself.

43. Given that only a negotiable note can have a "holder", the Appointment of Substitute Trustee's representation that Selene was acting on behalf of the "holder" of the Note constituted a false, deception and misleading representation that the HELOC Note was a negotiable instrument.

44. Further, the Appointment of Substitute Trustee was void ab initio because Selene had no legal right to appoint BWW or anyone for that matter as substitute trustee for the HELOC DOT.

45. Given Selene was not legally permitted to appoint BWW as the substitute trustee, the inclusion of the void Appoint of Substitute Trustee in the foreclosure action constituted a false, deception and misleading representation, to both Plaintiffs and to the Court itself.

46. Considering US Bank and RCF 2 did not purchase the Plaintiff's HELOC loan and they are not in possession of the HELOC Note—either directly or indirectly through their agents Selene and BWW—the Defendants know that they do not own the HELOC Note and that they cannot enforce the HELOC Note, and know that their claims of ownership of the HELOC Note in their Affidavit of Note Ownership's false, deception and a misleading representation, to both Plaintiffs and to the Court itself.

47. Given that the Defendants are aware that they do not possess the original HELOC Note and did not purchase the HELOC Note, the Defendants know that they have no right to collect the amounts claimed due in the Statement of Debt and that that their claims to those monies is false, deceptive and misleading to both Plaintiffs and to the Court itself.

48. As a direct and proximate result of Defendants' conduct, Plaintiff has expended time and energy attempting to pay off the loan for an amount to which Defendants are not entitled.

49. As a direct and proximate result of Defendants' conduct, Plaintiff was forced to file bankruptcy to stop Defendants from selling her home for monies that they were not legally due.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered from anxiety, embarrassment, stress, and lost sleep.

**E.   Defendants Illegal Intrusion Into Plaintiff's Home**

51. Meanwhile defendants were dispatching agents to the Plaintiff's home.

52. ServiceLink and/or other agents of the Defendants' entered into Plaintiff's home and changed the locks, destabilized the front door, removed items from the home and damaged the roof.

53. After changing the locks, ServiceLink either refused to provide Plaintiff with the access code or provided the incorrect code.

54. The Plaintiff had to incur the costs of having someone change the locks to regain access back to her home.

55. ServiceLink's alterations to the Plaintiff's home were not necessary to protect the value of the property nor the Defendants' non-existent rights in the property.

56. Further, ServiceLink's alterations did not constitute repairs. Rather, ServiceLink's alterations damaged the property and reduced the value of the property.

57. Defendants have charged Plaintiff for ServiceLink's unauthorized work on her home.

58. ServiceLink was acting at the behest of Selene, which claims it is working within the scope of loan servicing duties for US Bank and RCF 2.

59. Upon information and belief, ServiceLink has stolen property from borrowers' homes in the past and ServiceLink's theft of Plaintiff's personal property was foreseeable.

60. Both Selene and US Bank aware of ServiceLink's inclination to steal personal property from the borrowers' homes, but they condone it and therefore, they have not implemented any policies or procedures to prevent or discourage Servicelink and other property preservation companies from stealing property from the borrowers' homes.

61. Not only did ServiceLink have no right to make the unreasonable alterations and steal property, but ServiceLink had no right to enter into Property at all.

62. The DOT restricts the access of the lender and/or holder of the Note to entering the home for reasonable cause and only after providing written notice to the borrower.

63. Prior to instructing Servicelink to invade Plaintiff's home, Selene did not notify the Plaintiff that it was sending Servicelink to her home.

### COUNT ONE: VIOLATION(S) OF FDCPA
### (All Defendants except ServiceLink)

64. Plaintiff incorporates the preceding allegations by reference.

65. The foregoing acts and omissions of Defendants constituted (1) false, deceptive and misleading statements, and (2) unfair practices in violation of §§ 1692e and 1692f of the FDCPA.

*Misrepresenting the Amount, Character and Status of a Debt: § 1692e*

7

66. In relevant part, § 1692e prohibits debt collectors from using:

"[a]ny false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ……

(2) The false representation of –
    (A) the character, amount, or legal status of any debt;
……

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
…….

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e."

67. In the instant matter, Defendants' actions violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10) of the FDCPA.

68. Defendants ran afoul of the foregoing provisions in two respects: (1) proclaiming that U.S. Bank and RCF 2 were entitled to foreclose on Plaintiff thanks to a fraudulent assignment from Meridian, and (2) claiming BWW was the substitute trustee based on an ineffective, void Appointment of Substitute Trustee from Selene.

### *Unfair or Unconscionable Means: § 1692f*

69. In relevant part, § 1692f prohibits debt collectors from engaging in: "[u]nfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.

70. Merriam-Webster's Collegiate Dictionary defines unfair as: "[M]arked by injustice, partiality, or deception." Merriam-Webster's Collegiate Dictionary, 11th Ed. 2012.

71. In the instant matter, Defendants' actions constituted unfair conduct in violation of §1692f because critical representations made by Defendants to Plaintiff, to the court, and to the general public contained material falsehoods.

72. Defendants falsely represented to the general public and to the Court itself that US Bank and RCF 2 were the direct recipient of an assignment from BoA, and as such had the right to foreclose on Plaintiff's HELOC.

73. Defendants filed this foreclosure action on false representations—that they knew were false—including their knowledge that Meridian and Selene had no legal right or authority to execute any documents.

*Additional Violations of 15 U.S.C. §§ 1692e and 1692f*

74. More specifically, in violation of 15 U.S.C. §§ 1692e and 1692f, Defendants attempted to collect on the HELOC debt through false and unfair representations of the amount, status and/or character of the debt by:

    (a) filing for foreclosure when the character and status of the debt did not permit Defendants to file foreclosure;

    (b) stating the HELOC Note was issued in the amount of $100,000 and/or that BoA loaned $100,000 at the inception of the loan;

    (c) stating US Bank held the status as a "holder" of the HELOC Note;

    (d) claiming the HELOC Note was a negotiable instrument;

    (e) attempting to collect money that they were not entitled to collect;

    (f) attempting to collect an inflated debt amount;

    (g) attempting to collect fees that were not authorized or lawful;

    (h) scheduling a foreclosure sale that Defendants knew that they no right to; and

    (i) attempting to collect on the debt via an illegal foreclosure.

74. Such violations constituted false representations and unfair means or methods used in the collection of a debt.

76. As a result of Defendants' actions, Plaintiff has suffered such harm as has previously been stated herein.

9

77. Due to the foregoing violations of 15 U.S.C. §§ 1692e and 1692f, Plaintiff is entitled to actual damages pursuant to § 1692k(a)(1); statutory damages in an amount of up to $1,000.00 pursuant to § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to § 1692k(a)(3).

## COUNT TWO: VIOLATION(S) OF MCDCA
### (All Defendants except ServiceLink)

78. Plaintiff incorporates paragraphs 1 through 77.

79. The foregoing acts and omissions of Defendants as described in ¶¶ 65-73 constituted violations of Com Law § 14-202(11) of the MCDCA, based on Defendants' violations of 15 U.S.C. §§ 1692e and 1692f of the FDCPA.

80. The foregoing acts and omissions of Defendants as described in ¶¶ 65-73 also constituted violations of Com Law § 14-202(8) of the MCDCA because the Defendants knew they could not enforce the HELOC Note and had no right to collect on the debt, including filing a foreclosure action against Plaintiff and her Property.

81. At all times relevant hereto, BWW and Selene acted as agents on behalf of US Bank and RCF 2. BWW and Selene's actions therefore constituted US Bank and RCF 2's actions, in addition to US Bank and RCF 2's independent conduct.

82. Defendants' foregoing violations caused the Plaintiff to suffer actual damages, including assessment of undue and illegal charges, out-of-pocket expenses, fear of being foreclosed on and other mental and emotional distress, rendering Defendants liable for actual damages pursuant to MCDCA, Com Law § 14-203.

## COUNT THREE: VIOLATION(S) OF MCPA

83. Plaintiff incorporates paragraphs 78 through 82.

84. Violations of the MCDCA in turn constitute per se violations of the MCPA, pursuant to Md. Code Ann., Com Law § 13-301(14)(iii).

85. Selene violated Com Law § 13-316(c) by failing to provide a reasonable response or any response to Plaintiff's inquiries.

86. Defendants' foregoing violations caused the Plaintiff to suffer actual damages, including assessment of undue and illegal charges, fear of being foreclosed on and other mental and emotional distress, rendering Defendant liable for actual damages pursuant to the MCPA at § 13-408(a), and for attorney's fees pursuant to MCPA, § 13-408(b).

## COUNT FOUR: TRESPASS
**(All Defendants)**

87. Plaintiff reincorporates all the allegations above by reference.

88. Plaintiff, as the owner of the Property, has a possessory interest in her home.

89. All Defendants, either directly or indirectly, caused certain persons to physically enter into the Property and make unauthorized changes and alterations to or removals of personal property from Plaintiff's home.

90. Defendants did not attempt to notify Plaintiff and she had no knowledge that the Defendants planned on entering the Property.

91. The Plaintiff did not authorize the Defendants to enter the Property.

92. Under the circumstances, the Defendants were not authorized by any loan documents to enter and make alterations to the Property.

93. Consequently, the Defendants had no right to enter the Property.

94. The Defendants' unauthorized alterations to Plaintiff's home caused a significant decrease in the market value of the property.

95. Defendants know they had no legal right to enter into and make alterations to the properties that they service, but do so anyway, and on a routine basis as long as the property has been declared in default and they believed the property is vacant.

96. Defendants' motivation for such illegal acts is two-fold: to rack up fees and deter the borrower from questioning Defendants' authority to act under the terms of the HELOC Note.

97. Defendants' deliberate actions constitute malice as they intended to cause harm to Plaintiff as a tactic or method to financially benefit the Defendants.

98. Plaintiff incurred actual damages as a result of Defendant's trespass, including but not limited, substantial loss of market value due to damage to the roof, theft of personal property belonging to the Plaintiff and loss of equity due to inflated loan balance from unauthorized entries and alteration to Plaintiff's home, and significant emotional distress.

99. Plaintiff is entitled to compensatory damages, actual damages and punitive damages.

## COUNT FIVE: CONVERSION

100. Plaintiff reincorporates all the allegations above by reference.

101. All Defendants, either indirectly or directly, entered into the Plaintiff's home and removed personal property belonging to the Plaintiff.

102. Defendants know they have no legal right to take personal property from properties that they service, but routinely do so if the Property is declared in default and believed to be vacant.

103. The Defendants intended to steal the Plaintiff's personal property.

104. Defendants have so little respect for borrowers, such as Plaintiff, who live in certain zip codes, that Defendants will enter into homes of such borrowers with absolutely no colorable basis and steal large items that they know the borrowers will notice.

105. Defendants steal from borrowers, such as Plaintiff, on the belief that such borrowers do not know how to assert their rights and they feel they will get away scot-free with the thefts.

106. Upon information and belief, the Defendants have stolen millions of dollars' worth of property from their borrowers over the years.

107. Upon information and belief, the Defendants were motivated by malice when they stole the Plaintiffs property from the Property.

108. Defendants' conduct was the proximate cause of Plaintiffs' injuries, rendering Defendants liable for compensatory damages, actual damages and punitive damages.

## **TRIAL BY JURY IS DEMANDED**

109. Plaintiff demands a trial by jury of any and all issues triable in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seeks a judgment against the Defendants for actual and/or statutory damages and punitive damages; an injunction, class certification, and for attorneys' fees and costs, and such other specific or general relief the Court does find just and appropriate.

Respectfully submitted,

WASHINGTON LEGAL GROUP, LLC

/s/ *Jeffrey W. Styles*
Jeffrey W. Styles, Esq., Bar. 20659
1001 Connecticut Ave NW Ste 1138
Washington, D.C. 20036
Tel: (202) 503-1708
Email: jstyles@washlegal.com

*Attorney for Plaintiff Louise M. White*